(No. 56378.—

INTERCRAFT INDUSTRIES CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Casimer Pecyna, Appellee).

*Opinion filed March 25, 1983.*

Kane, Doy & Harrington, Ltd., of Chicago (Arthur O. Kane, of counsel), for appellant.

Casimer Pecyna, of Chicago, *pro se.*

JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that on February 16, 1978, petitioner, Casimer Pecyna, sustained accidental injuries arising out of and in the course of his employment by respondent, Intercraft In-

dustries Corporation. The arbitrator awarded petitioner worker's compensation for 56³/₇ weeks' temporary total disability and, finding further that petitioner had sustained physical impairment of the body to the extent of 16% thereof, awarded him compensation for a further period of 80 weeks. On review, the Industrial Commission modified the arbitrator's decision and found that as a result of the accident of February 16, 1978, petitioner was permanently and totally disabled from work under section 8(f) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(f)). The circuit court of Cook County confirmed the decision of the Industrial Commission and respondent appealed (87 Ill. 2d R. 302(a)).

Petitioner testified that on February 16, 1978, it rained and water had frozen on the pavement of the inside dock where respondent's trailers were parked. While hooking up his trailer, petitioner slipped on the ice and landed on his buttocks. Petitioner did not feel any pain at that time, but the next morning when he awoke he felt stiffness in his left shoulder, his left wrist, and his buttocks. Petitioner was sent to Corbett Clinic and was told not to return to work. After three weeks he returned to work. He performed his regular duties, but his left leg became progressively more numb, so at the end of the day he could hardly walk. Petitioner continued working until June 16, 1978. That day, when he awoke his left leg and buttock around the hip were numb. He felt pain in his back, buttocks and left leg. He lay on the floor until about 2 o'clock, when his wife called Dr. Maxwell Corbett, who suggested that petitioner be taken to Gottlieb Hospital. Petitioner testified that he was hospitalized for 26 days. At respondent's insurer's request, petitioner submitted to an examination by Dr. William Kane, who advised petitioner to return to work. Petitioner returned to work on April 26, 1979. He performed

his regular duties for four hours, but was sent back to Dr. Corbett's clinic. Dr. Corbett suggested that petitioner return to the hospital, and he was hospitalized for nine days. He returned to work for five days in September, but could not perform his duties. He was again sent to Dr. Corbett's office. There, Dr. Henry Acuna examined him, recommended that he not return to work, and suggested that petitioner be referred to another doctor by the insurance company. Petitioner was referred to Dr. Marshall Matz, who could find nothing wrong with him and recommended that he return to work. Petitioner returned to work but worked only one or two days per week for approximately four months. Petitioner stated that his last day of work was February 27, 1980.

Various medical reports and records were admitted into evidence. As noted above, respondent's insurance carrier's doctors could find nothing objectively wrong with petitioner. Dr. Audley Loughran, who examined petitioner at respondent's request, diagnosed petitioner as having a grade 2 spondylolisthesis, but found no definite evidence of ruptured disc or nerve root entrapment and recommended that petitioner continue working. Dr. Irwin Barnett diagnosed petitioner as having experienced a low back injury with bilateral sciatic nerve root irritation. The doctor noted that petitioner's spondylolisthesis would make his back quite susceptible to injury. Dr. Barnett concluded that petitioner had a major loss of use of the left lower extremity, and a minor loss of use of the right lower extremity. On a form apparently sent to the Corbett Clinic by respondent, Dr. Falk indicated that petitioner was capable only of performing "sedentary" work, which on that form was defined as being able to occasionally lift or carry small objects of less than 10 pounds, being able to stand or walk with occasional adequate rest periods, and with adequate rest periods being able to sit for six hours. The form indicated

that petitioner could not bend, stoop or operate foot controls, but could occasionally climb.

Respondent contends that an individual who voluntarily removes himself from the employment market and is found by all physicians who examined him to be capable of at least sedentary work is not entitled to an award for permanent total disability. Respondent cites petitioner's acceptance of retirement benefits from the Teamsters Pension Fund and the lack of evidence in the record that petitioner had sought other work to support its contention that petitioner simply decided to retire at age 60 and that his failure to be employed did not result from his inability to work.

The record shows that each time petitioner attempted to return to work it was as the driver of a semi-tractor-trailer. Petitioner testified that because of the pain in his lower back and left leg, and because his leg became numb after working for any length of time he could not perform his duties as a truck driver. Citing *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, and *A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, respondent argues that petitioner has not proved that he was totally disabled because he has not demonstrated the unavailability of a reasonably stable labor market for a person with his disability. We agree. In *Valley Mould & Iron Co.*, this court held that a claimant has the burden to prove that no employment is available for a person with his disability unless he is obviously unemployable, or unless there is medical evidence to support a claim of total disability. (84 Ill. 2d 538, 545-47.) Here, all the medical opinions adduced at the hearing on arbitration and the hearing on review were in agreement at least to the extent that petitioner was capable of sedentary work. Petitioner did not introduce evidence concerning his education or skills, and did not suggest that he fell into an "odd lot" category. (See *Valley Mould &*

*Iron Co.* and *Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168.) Thus, in our opinion he did not meet his burden of proving he was totally disabled.

In holding that petitioner was permanently and totally disabled the Commission cited *Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273. *Sterling Steel* is distinguishable in that the claimant went to his employer and asked for light work. On the recommendation of the employer's physician he obtained a back brace but the physician did not release him for work. Further, the extent of his physical capability was much less than that of petitioner.

For the reasons stated the judgment is reversed and the cause is remanded to the Industrial Commission for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*