This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              **NO. 34,519**

**STEVEN TRUJEQUE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**GARCIA, Judge.**

{1}      Defendant Steven Trujeque filed a docketing statement, appealing from the

district court's affirmance of his conviction by conditional plea for driving while under the influence of intoxicating liquor (first offense). [DS 1, 9] In this Court's notice of proposed disposition, we proposed to adopt the district court's memorandum opinion affirming the conviction. [CN 2–3] Defendant timely filed a memorandum in opposition (MIO). We have given due consideration to the memorandum in opposition, and, remaining unpersuaded, we affirm Defendant's conviction.

{2}    In his memorandum in opposition, Defendant continues to argue that Defendant's detention in handcuffs in the back of the police car was unreasonable because the State did not show that it was necessary for officer safety. [MIO 1] However, as the district court explained in its memorandum opinion, which we proposed to adopt in our notice of proposed disposition [CN 2–3], the officer detained Defendant because Defendant indicated that he was going to be argumentative; because Defendant's demeanor was aggressive; and because the officer needed to communicate with the individual who had called 911, check on her, find out what was happening, and investigate the potential criminal trespass or harassment. [RP 114–15, 117–18]

{3}    It is well settled that "an officer may detain a person in order to investigate possible criminal activity." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). "Investigatory detention

is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken. A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Id.* (internal quotation marks and citation omitted). [*See* RP 117] In the present case, the officer was dispatched based on a Priority 1, 911 call. [RP 114] The information the officer received from the call was that an individual was repeatedly knocking on the front and back doors of his ex-girlfriend's home; the caller was afraid and did not know where the individual was; the individual was a male, white adult, approximately 5'7" with a thin build, brown hair, brown eyes, and a moustache and beard; the individual's vehicle was a black, two-door Toyota Celica coupe; and that an earlier call had been made by the alleged victim's parent. [RP 113–15, 117] When the officer arrived on the scene, he observed a black car matching dispatch's description backing out of a driveway near or at the address in the dispatch. [RP 114]

{4}     The officer made contact with Defendant based on the matching descriptions from dispatch; upon contact from the officer, Defendant exhibited an argumentative and aggressive demeanor; and the officer—the sole officer on the scene—decided to secure Defendant in light of Defendant's demeanor while the officer contacted the caller and proceeded with his investigation based on the 911 call to determine whether

criminal trespass or harassment had occurred. [*See* RP 114–15, 117; *see also* MIO 2 (referencing Defendant's argumentative tone, confrontational manner, and aggressive demeanor)] We hold that, based on these facts, the trial court did not err in concluding that the detention was reasonable [RP 116]—in other words, that the officer had a reasonable, particularized suspicion that Defendant had been committing or was going to be committing criminal activity and that the officer's investigatory detention of Defendant was permissible. *See id.* [*See also* RP 117–18]

{5}     Whether some of Defendant's questions in response to the officer's investigation were non-argumentative or whether such questions, on their own, were sufficient to rise to the level of reasonable suspicion [*see* MIO 2–3] is not relevant because other factors existed in this case. Likewise, whether the officer specifically found a threat to his safety [MIO 3] is not relevant—the question is whether there was reasonable suspicion sufficient for an investigatory detention and, as we have explained above, there was. Although the question of officer safety is relevant to some inquiries, it is not in the present case. *See id.* (describing when it is permissible for an officer to subject an individual to an investigatory detention).

{6}     Moreover, as indicated by the district court in its memorandum opinion, what happened after Defendant was detained for investigatory purposes is not relevant because "the trial court *and [Defendant]* agreed that the question before the court was

4

whether [the officer] had probable cause to place [Defendant] in handcuffs *and not about any events after that point*" [RP 115–16 (emphases added)], and Defendant has provided no facts in his memorandum in opposition to refute this finding. [*See* MIO 1–3] Nonetheless, Defendant argues that, despite the fact that the de facto arrest argument was not preserved [*see* MIO 1], this Court should reverse anyway because the trial court committed fundamental error in failing to find that the delay—the time between when Defendant was handcuffed and placed in the police car and when Defendant was transported—constituted a de facto arrest [MIO 4–5]. Assuming that the doctrine of fundamental error applies in this circumstance, Defendant has not demonstrated that any error was fundamental in this case.

{7}      There are two strands of analysis under the fundamental error doctrine. *State v. Barber*, 2004-NMSC-019, ¶¶ 14–18, 135 N.M. 621, 92 P.3d 633. One strand focuses on circumstances of obvious or indisputable innocence while the second strand focuses more on process and the underlying integrity of our judicial system. *State v. Duran*, 2006-NMSC-035, ¶ 23, 140 N.M. 94, 140 P.3d 515. "Parties alleging fundamental error [under the second strand] must demonstrate the existence of circumstances that [either] shock the conscience[,] or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d

176 (internal quotation marks and citation omitted). "Absent error that goes to the foundation of the case or takes from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive, we will not reverse the district court." *State v. Dietrich*, 2009-NMCA-031, ¶ 30, 145 N.M. 733, 204 P.3d 748 (alterations, internal quotation marks, and citation omitted). Defendant contends that the officer was not diligent enough in his investigation because he could have called a DWI officer to investigate Defendant separately from the officer's own domestic violence investigation, and he further argues that the time frame during which Defendant was in the police car was simply too long. [MIO 4–5] Defendant has not described a circumstance that shocks the conscience, implicates a fundamental unfairness within the system that would undermine judicial integrity if left unchecked, or goes to the foundation of the case. *See Cunningham*, 2000-NMSC-009, ¶ 21; *Dietrich*, 2009-NMCA-031, ¶ 30; *see also Dietrich*, 2009-NMCA-031, ¶ 47 ("In a fundamental error analysis, where the defendant has waived all error by failing to object, the Court's goal is to search for injustice." (internal quotation marks and citation omitted)). Accordingly, we decline to conclude that Defendant has demonstrated fundamental error in this case.

{8}     For the reasons set forth in our notice of proposed disposition and herein, and for the reasons articulated in the memorandum opinion of the district court, we affirm

6

Defendant's conviction.

{9}     **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**RODERICK T. KENNEDY, Judge**