**SUBSEQUENT INJURY FUND, Petitioner,**

*v.*

**Daryl GRANT, Associated Grocers of Colorado, Colorado Compensation Insurance Authority, and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 89CA1428.

Colorado Court of Appeals, Div. I.

Oct. 10, 1991.

Rehearing Denied Nov. 7, 1991.

Certiorari Denied April 6, 1992.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for petitioner.

Fogel, Keating and Wagner, P.C., Marshall A. Fogel, David Struthers, Denver, for respondent Daryl Grant.

Paul Tochtrop, Denver, for respondents Associated Grocers of Colorado and Colorado Compensation Ins. Authority.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carol Mullins, Asst. Atty. Gen., Denver, for respondent The Indus. Claim Appeals Office of the State of Colo.

Opinion by Judge PIERCE.

This case is before us pursuant to a mandate from our supreme court in *Subsequent Injury Fund v. Grant*, 812 P.2d 1176 (Colo.1991), which vacated our decision in *Subsequent Injury Fund v. Grant*, 812 P.2d 1183 (Colo.App.1991), and directed us to again review a final order of the Industrial Claim Appeals Panel which ordered the Subsequent Injury Fund (SIF) to pay 70% of the permanent total disability benefits payable to claimant, Daryl Grant. In accordance with *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo.1991), we set aside the order and remand.

Claimant was rendered permanently and totally disabled from the combined effect of a prior back injury, preexisting industrial carpal tunnel syndrome, and a subsequent industrial injury to his shoulder. The Panel determined that 50% of claimant's disability was attributable to the prior back injury, 20% was attributable to the preexisting carpal tunnel syndrome, and the remaining 30% was due to the shoulder injury. It assessed liability for 70% of claimant's total disability to the SIF.

I.

SIF contends that the testimony of claimant's orthopedic physician establishes that claimant's total permanent disability was caused in part by claimant's preexisting obesity and osteophytosis and that the Panel, therefore, erred in holding it liable for a portion of claimant's permanent disability benefits. We disagree.

Expert medical testimony is not conclusive on questions of causation or degree of disability. *See Savio House v. Dennis,* 665 P.2d 141 (Colo.App.1983); *Casa Bonita Restaurant v. Industrial Commission,* 624 P.2d 1340 (Colo.App. 1981). Furthermore, an industrial aggravation of a dormant preexisting condition or weakness can be the basis of a permanent partial disability award. *See Siefried v. Industrial Commission,* 736 P.2d 1262 (Colo.App.1986).

In this case, there was no evidence that claimant's obesity and osteophytosis were independently disabling. Furthermore, the testimony of claimant's physician concerning the contribution of these nonindustrial conditions to claimant's total disability was equivocal and subject to conflicting inferences. Also, we agree with the Panel that claimant's testimony concerning the nature and extent of his December 1980 back injury supports an inference that his back-related disability is solely the result of his work injury, and not other nonindustrial factors. Thus, there is substantial evidence to support the Panel's determination that claimant's nonindustrial conditions were not independently disabling, and that determination is binding upon review. *Gelco Courier v. Industrial Commission,* 702 P.2d 295 (Colo.App.1985).

## II.

SIF next contends that it cannot be held liable for any portion of claimant's permanent total disability because one of claimant's prior disabilities, carpal tunnel syndrome, is an occupational disease. We agree that SIF's liability for prior injuries attributable to occupational diseases is governed exclusively by the specific provisions of § 8–51–112(2), C.R.S. (1986 Repl.Vol. 3B). However, for claimant's industrial injuries which are not attributable to an occupational disease, liability must still be apportioned pursuant to the general provisions of § 8–51–106(1)(a), C.R.S. (1986 Repl. Vol. 3B). *See Climax Molybdenum Co. v. Walter, supra.*

Section 8–51–106(1)(a) requires SIF contribution in all cases in which an employee is rendered totally and permanently disabled by the combined effect of two or more permanent partial disabilities. The statute was enacted to provide an incentive for employers to hire partially disabled workers by relieving those employers of full liability for total permanent disability which might result from a subsequent injury. *See Subsequent Injury Fund v. Thompson,* 793 P.2d 576 (Colo.1990). As such, an employer is liable for only that portion of the employee's industrial disability which is attributable to this subsequent injury. *Climax Molybdenum Co. v. Walter, supra.*

Section 8–51–112(1), C.R.S. (1986 Repl. Vol. 3B) establishes the "last injurious exposure" rule for disabilities attributable to occupational diseases. This rule is an exception to the general rule set forth in § 8–51–106(1)(a), and it provides that the employer and its insurance carrier in whose employment the employee was "last injuriously exposed to the hazards of such disease" shall have full responsibility for that part of the permanent total disability caused by the occupational disease. Section 8–51–112(1); *Climax Molybdenum Co. v. Walter, supra.*

Thus, SIF is liable, in accordance with § 8–51–106(1)(a), for the remaining portion of the employee's permanent total disability resulting from industrial injuries not involving occupational disease. *Climax Molybdenum Co. v. Walter, supra.*

Under these facts, and since there is no allegation that claimant was exposed to the hazards of carpal tunnel syndrome at his last employment, the nonparty employer with whom claimant was last injuriously exposed to the hazards of this occupational disease, and its insurer, if any, would alone be liable for 20% of claimant's permanent total disability, which is the percentage of his total disability attributable to occupational disease. *See* § 8–51–112(1). And, under § 8–51–106(1)(a), claimant's last employer and its insurer are liable for 30% of claimant's total disability as the percentage attributed to his subsequent shoulder injury, and SIF is liable for the remaining 50% resulting from his prior back injury.

Therefore, that portion of the Panel's order which found SIF liable for 70% of claimant's permanent total disability is set aside, and the cause is remanded to the Panel for entry of an order consistent with this opinion.

SMITH and DAVIDSON, JJ., concur.